**Owen James YARBOROUGH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2-81-363-CR.**

Court of Appeals of Texas,
Fort Worth.

June 1, 1983.

Jack V. Strickland, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Represented by Joe C. Lockhart, Asst. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

ASHWORTH, Justice.

Appellant, Owen James Yarborough, was found guilty of murder, found to be a habitual criminal by virtue of two prior felony convictions, and sentenced to confinement for life in the Texas Department of Corrections.

Judgment affirmed.

■ Appellant presents five grounds of error. His first ground of error alleges the trial court erred by refusing to grant appellant's motion to dismiss the indictment under the sixth and fourteenth amendments to the United States Constitution, Article 1, § 10, of the Texas Constitution, and the Speedy Trial Act of the State of Texas, in that more than 120 days had elapsed between appellant's arrest and his trial.

Appellant was arrested on October 18, 1980, and on December 23, 1980, was indicted for the murder of Robbie Ray Venable. On January 9, 1981, the State filed a written announcement of ready. At pretrial dockets, the State announced ready on January 29, 1981, March 12, 1981, April 30, 1981, and July 16, 1981. The record does not show why the case was not tried at the time of these settings. On July 27, 1981, the State filed its first motion for continuance and appellant filed a motion for speedy trial, a motion to dismiss under denial of constitutional right to speedy trial, and a motion to dismiss under the Speedy Trial Act of the State of Texas.

The State's motion for continuance was based on its inability to locate Ronnie Anderton, an eyewitness. The State's motion for continuance was granted, a writ of attachment issued for the witness and the case was reset for September 14, 1981. The appellant's motions were all denied. On July 29, 1981, the court announced that Anderton was in custody under the writ of attachment and offered appellant the option of proceeding to trial on July 30, 1981, or proceeding to trial on September 14, 1981. Appellant chose the September 14, 1981, setting stating that it was without waiver of error in the court's prior rulings.

On September 3, 1981, appellant filed a second motion to dismiss under the Speedy Trial Act and under denial of constitutional right to a speedy trial. This second motion was presented to the court on September 3, 1981; no evidence was presented and the motion was denied. The case went to trial on September 14, 1981.

Once the State has announced ready within the statutory time limits, as was done here, the burden is on the appellant to rebut by evidence that in fact the State was not ready. *Walters v. State,* 628 S.W.2d 526 (Tex.App.—Fort Worth 1982). There is nothing in the record to indicate that the State was not ready to go to trial at the times of the settings prior to July 27, 1981. The State was not ready for trial on July 27, 1981, because of the absence of the eyewitness, Anderton. Since the time of the murder, Anderton had moved to Graham and was employed there. He had suffered a broken arm in the course of his employment and could not be immediately located by the officers who went to Graham to secure his attendance at the trial. There was also some indication that Anderton was afraid of the appellant and had been warned by appellant's relatives not to testify. Anderton was located and brought to court shortly after the issuance of the writ of attachment. Appellant was given the opportunity to go to trial on July 30, 1981, and chose not to do so.

Appellant's attorney has vigorously pursued his asserted first ground of error; however we hold that it was incumbent on

appellant to rebut by evidence that the State was in fact not ready, and such burden was not met. *Walters v. State, supra.* Appellant's first ground of error is overruled.

■ Appellant's second ground of error complains of the admittance into evidence of several letters written to his ex-wife by appellant while he was in jail because no proper chain of custody was shown and his handwriting was identified only by the ex-wife, who was legally blind.

Appellant wrote a number of letters to his ex-wife, Rosie Stafford, while appellant was confined in the Tarrant County jail. Some of these letters were admitted into evidence through the testimony of Rosie Stafford who had no special qualifications in identifying handwriting. She testified she was married to appellant from 1973 until 1980, that she had seen his handwriting on many occasions, had seen him write, and would recognize his handwriting if she saw it. She testified she had a vision problem and her vision in her left eye was 20/400 and vision in her right eye was 20/250; that she had applied for governmental benefits as she was classified as being legally blind. She testified that the letters in question were the same ones written to her by appellant and that while the lighting had to be proper, she could identify them and the handwriting.

■ A witness may testify as to the handwriting of another person if the witness testifies that he is familiar with the handwriting and can identify it. *Bodiford v. State,* 630 S.W.2d 847 (Tex.App.—Fort Worth, 1982). While Rosie Stafford testified she had a vision problem, the competency of a witness to testify is left to the discretion of the trial court, and the trial court's ruling on competency will not be disturbed in the absence of a showing of abuse of discretion. *Villarreal v. State,* 576 S.W.2d 51 (Tex.Cr.App.1978). The trial court did not abuse its discretion in permitting Stafford to testify concerning the letters. Her vision problems went to the credibility of her testimony, not its admissibility.

■ Appellant contends there was no proper chain of custody established as to the letters. Stafford handed the letters to Martha Townsend, appellant's sister, some time prior to the trial. Stafford testified the letters admitted into evidence were the same ones delivered to Townsend, and that they appeared to be in the same condition as when delivered to Townsend. This chain of custody is sufficient to justify the admittance of the letters into evidence; appellant's argument goes to the weight to be given the letters, not their admissibility. Appellant's second ground of error is overruled.

Appellant's third ground of error alleges the trial court erred by instructing the jury in a misleading manner as to extraneous offense, creating the impression that extraneous offenses had in fact been "committed" by appellant rather than having been merely "discussed" in letters allegedly written by the appellant while he was in jail, which instruction constituted a comment on the evidence by the court in violation of V.A.C.C.P. art. 38.05.

The letters which were admitted into evidence contained statements by appellant as to several extraneous offenses such as "taking care of" the witness, Ronnie Anderton, and possibly hiring out as a hit man for the man who furnishes money for him to make bail. That portion of the charge to which appellant complains is as follows:

"You are further instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent or knowledge of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose."

■ Appellant's contention is that the word "discussed" should have been used in the court's charge rather than the word "committed". In reviewing that portion of the charge, and changing the word "committed" to "discussed", we hold that there was no comment by the court on the weight of the evidence in the use of the word "committed". It was just as proper to use the word "committed" as it would have been to use the word "discussed". The court instructed the jury that if committed, they could consider only for the purpose of determining intent or knowledge of appellant with regard to the murder charge. There was no comment by the court in the charge that was reasonably calculated to benefit the State or prejudice the defendant, and if there was error in the charge complained of, it is not reversible error. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr. App.1979). Appellant's third ground of error is overruled.

Appellant's fourth ground of error alleges the trial court erred in refusing to give the jury an instruction on circumstantial evidence where if the jury had found as a matter of fact that the witness Anderton was an accomplice, such instruction would have been required by law.

■ Appellant has thoroughly briefed the law as it was prior to the recent decision in *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1983), which eliminated altogether the necessity of a charge on circumstantial evidence. The court's charge properly instructed the jury on the reasonable doubt standard, and no charge on circumstantial evidence was required. Appellant's fourth ground of error is overruled.

Appellant's fifth ground of error contends the trial court erred in denying appellant's request that the identity of the State's informant be revealed inasmuch as there was at least a reasonable doubt that the informant was in fact a material witness to the facts forming the basis of this prosecution in violation of appellant's sixth amendment right of confrontation and to effective counsel.

The arrest warrant states in part that Ronnie Anderton and Owen J. Yarborough "came to the home of informant and Yarborough was drunk, and Anderton was very shaken," and Yarborough stated that they had been "robbing and killing that damn midget".

■ The general rule on disclosing the identity of an informant is that such disclosure is not required unless the informant participated in the offense, was present at the time of the offense, or was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the act charged. *Rodriguez v. State,* 614 S.W.2d 448 (Tex.Cr. App.1981). *Etchieson v. State,* 574 S.W.2d 753 (Tex.Cr.App.1978). The fact that the informant furnished information upon which the warrant was based does not necessarily make the informant a material witness. The appellant diligently sought the identity of the informant and was never specifically advised of such identity. There was testimony from several witnesses of threats by the appellant if they furnished information and that they were afraid of appellant. Appellant had the opportunity to cross-examine all witnesses testifying for the State as well as being advised prior to trial of all witnesses who had been subpoenaed. We hold that under all the circumstances attendant to this case, appellant's right to prepare his defense was not impaired by failure to disclose the informant's identity. *Laque v. State,* 627 S.W.2d 781 (Tex.App.—San Antonio 1982). Appellant's fifth ground of error is overruled.

Judgment affirmed.